UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>vs.<br><br>CURTIS TEMPLE,<br><br>                Defendant. | CR. 17-50062-JLV<br><br>ORDER |

**INTRODUCTION**

On April 18, 2017, a grand jury returned an indictment charging defendant Curtis Temple with destroying government property in violation of 18 U.S.C. § 1361. (Docket 1). The indictment alleged defendant overgrazed land "maintained" by the Bureau of Indian Affairs ("BIA") between March 25, 2013, and the date of the indictment. Id. Defendant is also the plaintiff in two civil actions pending in this court stemming from the conduct at issue in the indictment. See Temple v. Her Many Horses et al., Civ. 15-5062; Temple v. United States, Civ. 17-5075. Defendant moved to dismiss the indictment against him and the court referred his motion to Magistrate Judge Daneta Wollmann for a report and recommendation ("R&R"). (Dockets 18 & 20). The magistrate judge recommended the court dismiss the indictment. (Docket 35).

Shortly after the magistrate judge issued the R&R, the government moved to dismiss the indictment on the grounds "that the interest of justice will best be served by dismissing" the indictment. (Docket 37). In a joint

status conference for the three cases involving defendant, held on May 24, 2018, counsel for the government stated it did not intend to re-indict defendant if the court granted its motion to dismiss the indictment against him. (Docket 42). The court dismissed the indictment without prejudice. Id.

Pursuant to the Hyde Amendment, defendant now seeks attorney's fees relating to his defense against the indictment. Docket 43; see Act of Nov. 26, 1997, Pub. L. No. 105-119, § 617, 111 Stat. 2440, 2519, reprinted as statutory note in 18 U.S.C. § 3006A. Defendant argues the government's prosecution of him was "frivolous, vexatious, and in bad faith." (Docket 43 at p. 4). He seeks approximately $90,000 in attorney's fees for three separate attorneys, supported by two affidavits detailing an itemized list of litigation expenses. (Dockets 44 & 45). The government resists defendant's motion, asserting its prosecution was based on a reasonable interpretation of the law. (Docket 52 at p. 4). For the reasons given below, the court determines the prosecution of defendant was frivolous and orders the parties to more fully brief certain matters before the court rules on defendant's motion.

**ANALYSIS**

**I.   Legal Standards**

The Hyde Amendment provides in full:

During fiscal year 1998 and in any fiscal year thereafter, the court, in any criminal case (other than a case in which the defendant is represented by assigned counsel paid for by the public) pending on or after the date of the enactment of this Act, may award to a prevailing party, other than the United States, a reasonable attorney's fee and other litigation expenses, where the court finds

2

> that the position of the United States was vexatious, frivolous, or in bad faith, unless the court finds that special circumstances make such an award unjust. Such awards shall be granted pursuant to the procedures and limitations (but not the burden of proof) provided for an award under section 2412 of title 28, United States Code. To determine whether or not to award fees and costs under this section, the court, for good cause shown, may receive evidence ex parte and in camera (which shall include the submission of classified evidence or evidence that reveals or might reveal the identity of an informant or undercover agent or matters occurring before a grand jury) and evidence or testimony so received shall be kept under seal. Fees and other expenses awarded under this provision to a party shall be paid by the agency over which the party prevails from any funds made available to the agency by appropriation. No new appropriations shall be made as a result of this provision.

Act of Nov. 26, 1997, Pub. L. No. 105-119, § 617, 111 Stat. 2440, 2519, reprinted as statutory note in 18 U.S.C. § 3006A. In a previous case, the court discerned seven separate elements from the statutory text. They are:

> (1) the case was pending on or after the enactment of the Hyde Amendment; (2) the case was a criminal case; (3) the defendant was not represented by assigned counsel paid for by the public; (4) the defendant was the prevailing party; (5) the prosecution was vexatious, frivolous, or in bad faith; (6) the attorney's fees were reasonable; and (7) no special circumstances exist that would make an award unjust.

United States v. Henrikson, No. 15-CR-50084, Docket 92 (D.S.D. June 5, 2017) (citing United States v. Gomez, No. 10-CR-1326, 2012 WL 2899715, at *3 (W.D. Tex. July 9, 2012)).

"The intent of the Hyde Amendment is to deter prosecutorial misconduct, not prosecutorial mistake." United States v. Monson, 636 F.3d 435, 439 (8th Cir. 2011) (citing United States v. Bowman, 380 F.3d 387, 391 (8th Cir. 2004)). Congress limited "Hyde Amendment awards to cases of affirmative

prosecutorial misconduct rather than simply any prosecution which failed." United States v. Knott, 256 F.3d 20, 29 (1st Cir. 2001). "Requiring proof of prosecutorial misconduct thus means that a defendant seeking to prove entitlement to a Hyde Amendment award faces a 'daunting obstacle.' " Monson, 636 F.3d at 439 (quoting United States v. Gilbert, 198 F.3d 1293, 1302 (11th Cir. 1999)). "The defendant bears the burden of proving that the United States's position was vexatious, frivolous, or in bad faith." Id. at 438 (citing United States v. Porchay, 533 F.3d 704, 711 (8th Cir. 2008). Defendant also "has the burden to show there are no special circumstances making the award unjust." Bowman, 380 F.3d at 391. "Because the text of the Hyde Amendment uses the terms 'vexatious,' 'frivolous,' and 'in bad faith' disjunctively, courts have recognized that each term has an independent meaning and that proof of any of the terms may entitle a prevailing defendant to an award pursuant to the Hyde Amendment." Monson, 636 F.3d at 438-439.

"A prosecution is vexatious if it is 'without reasonable or probable cause or excuse.' "[1] Id. at 439 (citing Porchay, 533 F.3d at 711). "A prosecution is

---

[1]The Court of Appeals for the Eighth Circuit has yet to determine if the Hyde Amendment's vexatious element contains a subjective element—that is, whether a prosecution must be malicious or undertaken to harass or annoy to be vexatious. Monson, 636 F.3d at 439 n.4. Courts of Appeals for other circuits hold there is such a subjective element. See, e.g., United States v. Manzo, 712 F.3d 805, 810 (3d Cir. 2013); Knott, 256 F.3d at 29; United States v. Sherburne, 249 F.3d 1121, 1126 (9th Cir. 2001). Because the court concludes defendant is entitled to Hyde Amendment relief under a separate prong, it need not resolve this issue.

4

frivolous if it is 'utterly without foundation in law or fact.' This standard requires a consideration of the legal merit to a prosecution." Id. (citing Porchay, 533 F.3d at 711). The Court of Appeals for the Eighth Circuit, in considering the Hyde Amendment's frivolity prong, cited approvingly cases from two other Courts of Appeals defining frivolous prosecutions as "foreclosed by binding precedent," "obviously wrong" or "groundless . . . with little prospect of success." United States v. Braunstein, 281 F.3d 982, 995 (9th Cir. 2002); United States v. Bunn (*In re* 1997 Grand Jury), 215 F.3d 430, 436 (4th Cir. 2000). The Eighth Circuit has not defined bad faith in the Hyde Amendment context. Other Courts of Appeals have looked to Black's Law Dictionary to conclude "bad faith is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; . . . it contemplates a state of mind affirmatively operating with furtive design or ill will." Gilbert, 198 F.3d at 1299 (quoting Black's Law Dictionary 138 (6th ed. 1990); see also United States v. True, 250 F.3d 410, 423 (6th Cir. 2001) (same); Bunn, 215 F.3d at 436 (same).

II. **Hyde Amendment**

The parties agree the main contested element is whether the prosecution was vexatious, frivolous, or in bad faith. (Dockets 43 at p. 2 & 52 at p. 2). Three of the elements necessary for defendant to prevail on his Hyde Amendment motion are unchallenged. This is a criminal case with retained counsel pending after 1997. The parties argue the additional three elements—

5

whether defendant is the prevailing party, whether the attorney's fees sought are reasonable, and whether special circumstances exist that would make an award unjust—either minimally or not at all. They are nevertheless elements that must be established before the court could make an award. The court will examine the contested four elements individually.

### A. Whether defendant was the prevailing party

The Eighth Circuit has not defined "prevailing party" in the Hyde Amendment context. In <u>Henrikson</u>, the court's last case addressing the prevailing party issue, the court looked to the totality of the circumstances surrounding the dismissal of the indictment without prejudice in that case, "including the litigation chronology and the fact that [the defendant] won the relief that he sought[.]" <u>Henrikson</u>, CR. 15-50084, Docket 92 at p. 7 (citing <u>United States v. Gardner</u>, 23 F. Supp. 2d 1283, 1291 (N.D. Okla. 1998)). The court analyzed the issue with a focus on the individual facts of that case. <u>Id.</u> The court follows that method here.

Defendant argues the magistrate judge's prior finding the government did not own the land it charged defendant with degrading forecloses the government from re-indicting him. (Docket 43 at p. 3). Because defendant cannot be re-indicted for this conduct—in his view—he argues he achieved all the relief available to him, making him the prevailing party. <u>Id.</u> The government did not argue or otherwise discuss the prevailing party element.

6

The court dismissed the indictment against defendant without prejudice. (Docket 42 at p. 2). It is possible the government could re-indict defendant, as the statute of limitations on the charged offense has not run.[2] However, the government informed the court on the record during the May 2018 joint status conference it would not re-indict defendant on the "pending criminal charge or another charge related to the facts alleged in the criminal case or the pending civil cases." Id. Although the court dismissed the indictment without prejudice, it did so on the understanding defendant would not face renewed criminal charges for his conduct. This is the functional equivalent of a dismissal with prejudice. The court thus finds defendant was the prevailing party in the criminal case. See United States v. Terzakis, 854 F.3d 951, 954-55 (7th Cir. 2017) (holding a dismissal with prejudice "satisfies the prevailing-party requirement").

### B. Whether prosecution was vexatious, frivolous, or in bad faith

Defendant argues the government's prosecution was frivolous, vexatious, and in bad faith. (Docket 43 at p. 4). He contends the prosecution was "unprecedented and imaginative in its very conceptualization"—i.e. frivolous—because the land the government claimed defendant degraded was Indian trust land that the government did not own in full. Id. at pp. 8-9. Defendant

---

[2]Defendant was charged under 18 U.S.C. § 1361, which is subject to the general five-year statute of limitations. 18 U.S.C. § 3282. The indictment alleged defendant's criminal conduct occurred until April 18, 2017, setting the statute of limitations to expire in 2022.

further argues the prosecution was vexatious and in bad faith because the government sought, by means of a felony conviction, to "deprive [defendant] of his bidding preference for future ranching on the Pine Ridge Reservation so that relatives of a current BIA official could utilize" the land.  Id. at p. 8.  Defendant also asserts the prosecution was "an effort to silence" him and interfere with his civil cases against the government.  (Docket 53 at pp. 4-5).

The government responds it merely took a different position on the issue of whether the United States owns the land it accused defendant of degrading and that both parties advanced "reasonable interpretations of the law." (Docket 52 at p. 4).  The government points to its "trust responsibility to preserve and maintain the land for the use of Indian people" and the fact all tribal "rights are subject to the supreme legislative authority of the United States" as proof its prosecution was sufficiently legally supported so as not to be frivolous or vexatious.  (Docket 52 at p. 5) (citing United States v. Wadena, 152 F.3d 831, 843 (8th Cir. 1998)).  Finally, the government contends its prosecution was not undertaken in bad faith.  Id. at pp. 10-11.  It asserts "the civil and criminal divisions of the United States Attorney's Office simply did not coordinate criminal charging decisions with the civil case[.]"  Id. at p. 11.

### 1. **Whether prosecution was frivolous**

Determining whether the prosecution was frivolous requires the court to evaluate the legal basis of the indictment against defendant.  Monson, 636 F.3d at 440.  The key issue in dispute is whether the government owns the

8

land it charged defendant with degrading.³  Government ownership of the affected property is a jurisdictional element of the offense the government charged in the indictment.  United States v. Krause, No. 17-3674, slip op. at 6 (8th Cir. Jan 30, 2019) ("[T]he property must belong to the United States for a person to be guilty of" 18 U.S.C. § 1361).  Therefore, if the proposition that the government owns the land at issue is "utterly without foundation in law or fact," the prosecution was frivolous.  Porchay, 533 F.3d at 711.

The land at issue consists of Red Shirt Table Range Units 169 and P-501. (Docket 1).  The ownership of these units of land is complex.  The magistrate judge made factual findings on this topic that the court will adopt.  (Docket 35 at pp. 2-3).  Range Unit 169 consists of "six tracts of land all held in trust by the United States." Id. at p. 2.  These six tracts are owned in various configurations by the Oglala Sioux Tribe ("OST"), defendant, and individual Indian land owners.  Id. at pp. 2-3.  Some of the tracts are fractionated, meaning the land is "owned in common by Indian landowners and/or fee

---

³The R&R additionally concluded the indictment should be dismissed because statutes of general federal applicability, such as 18 U.S.C. § 1361, "do not apply to areas left to tribal self-government," such as "the right to regulate range management."  (Docket 35 at pp. 14-15).  Since the offense involves "a crime by an Indian against Indian land," which is exempted from federal jurisdiction, the magistrate judge concluded the court had no jurisdiction over the offense.  Id. at p. 16; see also 18 U.S.C. § 1152 (foreclosing application of the "general laws of the United States" to "offenses committed by one Indian against the person or property of another Indian").  Defendant does not appear to argue this conclusion was so evident as to render the prosecution vexatious, frivolous, or in bad faith.  The court finds the government's arguments on this point to be reasonably novel, as opposed to frivolous.

owners holding undivided interests therein." Id.; 25 C.F.R. § 166.4. One of the tracts in Range Unit 196 is owned by the government. (Docket 35 at p. 3). However, the parties agree that tract is not eligible to be leased. (Docket 33 at p. 1). The government does not allege defendant's livestock grazed on this tract. (Docket 35 at p. 3).

Range Unit P-501 consists of 31 tracts of land. Id. Of these tracts, 28 are held in trust by the United States for the OST, defendant, and various Indian landowners. Id. Defendant owns Tract 3463-A in full and the land is not held in trust by the federal government. Id. The final two tracts are partially owned in fee simple by a non-Indian landowner and partially held in trust for Indian landowners. Id. To summarize, out of the two Range Units, only one tract of land is directly owned by the government and that tract is not at issue in the indictment. One additional tract is owned in fee simple directly by defendant and a portion of another tract is owned in fee simple by a non-Indian landowner. The remainder of the land is held in trust by the United States for the OST and various Indian owners.

The question of whether land held in trust by the United States on behalf of tribal nations and individual Indians is owned by the United States is answered by elementary principles of Indian law.[4] "Most tribal land is held in

---

[4]The R&R documents the legal history of the lands that now comprise the Pine Ridge Reservation, including the lands at issue here. (Docket 35 at pp. 18-24). The R&R's thorough analysis provides additional support for the court's conclusion the United States does not own Indian trust land in the manner contemplated by 18 U.S.C. § 1361 and the court adopts the analysis in full.

trust by the federal government *for the beneficial ownership of the tribe.*" Cohen's Handbook of Federal Indian Law § 15.03 (Nell Jessup Newton ed., 2017) (emphasis added). When the United States owns Indian land in trust for a tribe or for individual Indians, "[f]or all practical purposes, the tribe own[s] the land. Grants of land subject to the Indian title by the United States, which ha[s] only the naked fee, would transfer no beneficial interest." United States v. Shoshone Tribe of Indians of Wind River Reservation in Wyo., 304 U.S. 111, 116 (1938). "Although the United States retained the fee, and the tribe's right of occupancy was incapable of alienation or of being held otherwise than in common, that right is as sacred and as securely safeguarded as is fee simple absolute title." Id. at 117. "As a general rule, Indian lands are not included in the term 'public lands' which are subject to sale or disposal under general laws." Bennett Cty. S.D. v. United States, 394 F.2d 8, 11 (8th Cir. 1968).

> The entire beneficial ownership of [trust] lands was in the Indians. Nothing but the naked legal title in trust for them was in the United States. Of the Indians' interest in such land, the supreme court has repeatedly said: 'For all practical purposes they owned it; as the actual right of possession, the only thing they deemed of value was secured to them by treaty until they should elect to surrender it to the United States.

King v. McAndrews, 111 F. 860, 870 (8th Cir. 1901) (citing Leavenworth, Lawrence & Galveston R.R. Co. v. United States, 92 U.S. 733, 742-43 (1875).

The court concludes the government does not own the land it charged defendant with degrading. The government owns nothing more than the formalistic "naked legal title" to the land and actual ownership is vested in the

11

OST and Indian landowners for whom the government holds the land in trust. King, 111 F. at 870. The government cannot charge defendant with degrading government land under 18 U.S.C. § 1361 when the land in question does not, in fact, belong to the government. This conclusion is supported by the basic legal foundations of Indian land tenure—principles with which the United States Attorney's Office for the District of South Dakota, which exercises jurisdiction over nine Indian reservations, should be aware. On this basis, the court finds the government's prosecution of defendant was "utterly without foundation in law or fact," "foreclosed by binding precedent," "obviously wrong," and "groundless"—that is, the prosecution was frivolous. Monson, 636 F.3d at 440 (citing Braunstein, 281 F.3d at 995; Bunn (*In re* 1997 Grand Jury), 215 F.3d at 436).

### 2. Whether prosecution was vexatious or in bad faith

Defendant also contends the government's prosecution was vexatious and in bad faith. (Docket 43 at p. 4). In defendant's view, the government charged him criminally in retaliation for his civil actions concerning the land dispute. (Docket 53 at pp. 4-5). He points to the circumstances of his arrest as evidence. (Docket 43 at pp. 9-10). He claims his arrest immediately following the depositions of "certain government witnesses in Rushville," Nebraska, on April 26, 2017, shows that the civil and criminal divisions of the United States Attorney's Office coordinated regarding defendant's civil and

12

criminal cases.  Id.  The government denies any coordination.  Id. at pp. 10-11.

The court need not address whether the prosecution was vexatious or in bad faith because it previously determined the prosecution was frivolous.  See Monson, 636 F.3d at 438-39 ("Because the text of the Hyde Amendment uses the terms 'vexatious,' 'frivolous,' and 'in bad faith' disjunctively, courts have recognized that each term has an independent meaning and that proof of any of the terms may entitle a prevailing defendant to an award[.]").  The court is reluctant to conclude the prosecution was malicious or otherwise subjectively dishonest, as may be required for a vexatious or bad faith finding.[5]  Defendant merely asserts there is a connection between his civil and criminal matters and invites the court to infer improper government behavior.  The court is unwilling to conclude the government prosecuted defendant vexatiously or in bad faith in the absence of clear evidence.

**C.     Whether the attorney's fees are reasonable**

Defendant seeks $88,634.92 in attorney's fees related to this prosecution.  (Dockets 44, 44-1, 44-2 & 45).  These fees were charged by three separate attorneys, Terry Pechota, Roger Roots, and James Hurley.  Id.

---

[5]The court is especially reluctant to address these prongs because of the lack of guidance from the Eighth Circuit and the "clear tension among and overlap in the definitions employed by other circuits."  United States v. Terzakis, 854 F.3d 951, 955 (7th Cir. 2017).  There is no need for the court to delve into these issues.

13

The government did not object to the defendant's request for fees or otherwise discuss fees specifically.

Attorney's fees under the Hyde Amendment are governed by the Equal Access to Justice Act ("EAJA"). Act of Nov. 26, 1997, Pub. L. No. 105-119, § 617, 111 Stat. 2440, 2519, reprinted as statutory note in 18 U.S.C. § 3006A ("Such awards shall be granted pursuant to the procedures and limitations (but not the burden of proof) provided for an award under section 2412 of title 28, United States Code."). The EAJA permits the court to award "reasonable fees and expenses of attorneys."[6] 28 U.S.C. § 2412(b). If the court awards attorney's fees, they may not be "in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." Id. at § 2412(d)(2)(A). The EAJA also requires the prevailing party, if an individual, to have a net worth "not exceed[ing] $2,000,000 at the time the . . . action was filed[.]" 28 U.S.C. § 2412(d)(2)(B).

Defendant's fee request is incomplete under the EAJA and potentially unreasonable. Defendant seeks attorney's fees at the rate of $200 per hour for each of the three attorneys. (Dockets 44, 44-1, 44-2 & 45). The court is familiar with the expertise of Attorneys Pechota and Hurley in the fields of

---

[6]Both the Hyde Amendment and the EAJA are permissive, not mandatory. The court "may award" attorney's fees and litigation costs. Act of Nov. 26, 1997, Pub. L. No. 105-119, § 617, 111 Stat. 2440, 2519, reprinted as statutory note in 18 U.S.C. § 3006A; 28 U.S.C. § 2412(b).

Indian law, federal criminal law and land use law.  (Dockets 44 & 45).  The court is additionally familiar with the limited availability of lawyers in western South Dakota with expertise in the areas of law relevant to this case.  The court considers attorney's fees at the rate of $200 per hour reasonable for Mr. Pechota and Mr. Hurley in these circumstances.  Defendant does not, however, justify exceeding the EAJA's statutory limit for Mr. Roots under the exceptions permitted in the statute.  (Docket 44-2).  The court is unfamiliar with Mr. Roots and cannot conclude attorney's fees at the rate of $200 per hour is reasonable for him on this record.

Defendant's fee request is incomplete because he has not shown his net worth was under $2,000,000 when he was indicted.  This is a threshold qualification defendant must meet.  28 U.S.C. § 2412(d)(2)(B).  Some of the fee expenses defendant seeks appear unreasonably duplicative as well.  <u>Compare</u> Docket 44-1 at p. 9 (claiming 22.5 hours of work on the motion to dismiss for Mr. Pechota) <u>with</u> 44-2 at p. 1 (claiming 28 hours of research for same motion); <u>see generally</u> Dockets 44-1, 44-2, 45 (claiming time spent by each attorney in the same meetings, responding to e-mails from one another, having phone conferences with one another).  Defendant does not explain why he needed three attorneys to address this criminal matter.  Finally, one of defendant's attorneys, Mr. Roots, did not submit an affidavit with a detailed accounting of the time spent on this matter.  Mr. Pechota submitted an e-mail from Mr. Roots containing a cursory accounting of the hours spent on the matter, with

15

no specific dates associated with the time spent and amounts of time that appear unreasonable or insufficiently detailed. See Docket 44-2 (claiming 13 hours for "drafting memos," eight hours for "travel, May-July 2017," and five hours for a *pro forma* motion for admission in this court *pro hac vice*).

The court cannot find defendant's fee request is reasonable from the face of the affidavits he submitted. The court further notes the government made no argument on this point. The court will therefore require defendant to supplement his fee request with specific information addressing the deficiencies identified above. The government shall respond to defendant's supplement within 21 days and defendant may reply to the government's response within 14 days.

## D. Whether special circumstances exist

Defendant also "has the burden to show there are no special circumstances making the award [of attorney's fees] unjust." Bowman, 380 F.3d at 391. Neither defendant nor the government specifically addressed this element. Another district court in this circuit summarized special circumstances findings to include "instances where the government advances in good faith novel but credible extensions of precedent on unsettled issues; where the government advances cases based on issues of first impression; and where the conduct of an attorney or applicant renders a fee award unjust." United States v. Heald, Case No. 4:14-CR-68-02, 2018 WL 2122836, at *7 (E.D. Ark. May 8, 2018). At this moment, the court does not believe any special

16

circumstances exist which would make an award of attorney's fees unjust. However, given the parties' failure to address the special circumstances element, the court orders defendant to show no special circumstances exist in his supplemental briefing. The government shall respond to this argument in its response to defendant's submission and defendant may reply to the government's response.

### III. Conclusion

The court finds the government prosecuted defendant under a legal theory obviously repudiated by elementary principles of Indian law about which the government should be aware. The prosecution was frivolous under the Hyde Amendment and defendant may well be entitled to attorney's fees. The court orders the parties to file supplemental briefing on two elements of the Hyde Amendment. Within 30 days of this order, defendant shall file supplemental information and briefing addressing the deficiencies in his fee affidavits noted above, see Section II.C supra, and whether any special circumstances exist which would render an award of attorney's fees unjust. The government shall respond to defendant's supplemental filings within 21 days. Defendant may reply to the government's response within 14 days.

Accordingly, it is

ORDERED that the parties submit supplemental information and briefing on these matters and within the deadlines described above.

Dated February 13, 2019.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE