UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>  vs.<br><br>CURTIS TEMPLE,<br><br>                Defendant. | CR. 17-50062-JLV<br><br>ORDER |

**INTRODUCTION**

On April 18, 2017, a grand jury returned an indictment charging defendant Curtis Temple with destroying government property in violation of 18 U.S.C. § 1361. (Docket 1). The indictment alleged defendant overgrazed land "maintained" by the Bureau of Indian Affairs ("BIA") between March 25, 2013, and the date of the indictment. Id. Defendant moved to dismiss the indictment against him and Magistrate Judge Daneta Wollmann recommended the court dismiss the indictment. (Dockets 18 & 35). The court dismissed the indictment without prejudice upon the government's motion. (Dockets 37 & 42).

Pursuant to the Hyde Amendment, defendant now seeks attorney's fees relating to his defense against the indictment. Docket 43; see Act of Nov. 26, 1997, Pub. L. No. 105-119, § 617, 111 Stat. 2440, 2519, reprinted as statutory note in 18 U.S.C. § 3006A. The court concluded the government prosecuted defendant on a frivolous legal theory that it—and not the Oglala Sioux

Tribe—owned the land it accused defendant of overgrazing.[1]  (Docket 54 at pp. 7-12).   However, the court did not grant defendant's Hyde Amendment motion because it was incomplete on a number of fronts.   Particularly relevant here, the court concluded defendant had not shown his net worth was under $2 million when he was indicted.   Id. at p. 15.   The court ordered defendant to remedy this deficiency.   Id. at p. 17.

As recounted in more detail below, defendant did not make the necessary showing.   The record does not show by a preponderance of the evidence that defendant's net worth was under $2 million on April 18, 2017.   The court denies defendant's motion for Hyde Amendment attorney's fees.

**I.   Facts**

In his first affidavit after the court's order, defendant stated conclusorily that his net worth did not exceed $2 million.   (Docket 56).   He asserted his "sole source of income is from ranch income" and that he had "claims" against him by the Bureau of Indian Affairs ("BIA") in the amount of $350,000.   Id. at ¶ 3.   He also stated he had a judgment against him in a civil case of approximately $120,000.   Id.   Defendant gave no accounting of his assets.

---

[1]The government asks the court to reconsider this ruling, with considerably more vigor than it displayed in its original opposition to defendant's motion.  Compare Docket 52 at pp. 3-8 with Docket 65 at pp. 5-23.   It did not explain why it should be allowed a second bite at the apple.   Cf. United States v. Mask of Ka-Nefer-Nefer, 752 F.3d 737, 742 (8th Cir. 2014) ("The government's motion to reconsider did not cite an applicable Federal Rule—a dangerous omission[.]").   In any event, the government's motion for reconsideration is moot because the court denies the Hyde Amendment motion on other grounds.

The government had no such reluctance. It secured an affidavit from Danelle Daugherty, the Acting Regional Director for the BIA's Great Plains Regional Office. (Docket 66). Ms. Daugherty was responsible for overseeing the BIA's land management functions. Id. at ¶ 1. She stated that defendant requested to remove 11,374.3 acres of land from trust status in June 2016. Id. at ¶ 2. The BIA appraised the land at $401 per acre, for a total value of $4,561,094.30. Id. at ¶ 4. The land was placed into fee status and the fee patents were "sent to [defendant's] representative on May 26, 2017." Id. at ¶ 5. Ms. Daugherty did not state when the land was converted to fee status.

The government also noted that defendant has substantial livestock holdings. In September of 2012, the BIA counted 1,592 head of cattle in defendant's possession, all listed as in good condition. (Docket 66-2). In February of 2017, plaintiff testified in a deposition that he had "about a thousand head" of cattle." (Docket 66-3 at p. 2). The government did not estimate the worth of defendant's livestock.

In an affidavit attached to his reply brief, defendant disputed the government's assertions. (Docket 80). He argued "[t]rust land is valued at a far less market value than deeded land" because of the restrictions and locations of trust land. Id. at ¶¶ 3-4. He further asserted at the time of his indictment "the real estate that [he] owned was held in trust[.]" Id. at ¶ 2. In defendant's opinion, his land was not worth more than $200 per acre. Id. at ¶ 6. He also asserted—as of the date of the affidavit—that he only owned 20 head of cattle,

3

with the remainder of his livestock carrying the brands of family members.  Id. at ¶ 7.  Finally, he alleged more debts: $550,000 to Bank of the West; a state court judgment of $130,000; debt to the BIA of $350,000; and debt to attorneys of $150,000.  Id. at ¶ 8.  Defendant again did not provide an accounting of his assets.  Nor were any of his assertions supported by any evidence.

The court ordered defendant to file "a detailed statement of his net worth as of April 18, 2017[,]" under oath and with supporting documentation.  (Docket 81 at p. 3).  He filed an affidavit stating the 11,374.3 acres "would have been the amount of land that was in [his] name on April 18, 2017[,]" but did not state whether the land was in trust or fee status on that date.  (Docket 86 at ¶ 5).  He further stated that "two months previous to April 18, 2017," he owned 600 yearling calves, 1,200 spring calves, 1,500 cows, 50 bulls and 300 replacement heifers.  Id. at ¶ 6.  He sold and transferred most of these cattle after his indictment.  Id. at ¶¶ 7-8.  In "April, 2017," defendant owed $222,101 to Bank of the West and "a claimed amount of $350,000" to the BIA.  Id. at ¶ 9.  His affidavit provided no supporting documentation.

In its response brief, the government alleges defendant valued his bulls at $1,500 and his cows at $1,000 per head in administrative tort claims filings on

4

record with the BIA.[2] (Docket 90 at p. 4). Applying these values, the government asserts defendant's livestock were worth at least $1.575 million, not counting his yearling and spring calves or his replacement heifers. Id. Adding its estimates of defendant's land and livestock, the government argues his net worth was much more than $2 million, even accounting for his debts. Id.

## II. Analysis

The Hyde Amendment provides that attorney's fees "shall be granted pursuant to the procedures and limitations (but not the burden of proof) provided for an award under" the Equal Access to Justice Act ("EAJA").[3] Act of Nov. 26, 1997, Pub. L. No. 105-119, § 617, 111 Stat. 2440, 2519, reprinted as statutory note in 18 U.S.C. § 3006A. The EAJA only permits courts to award attorney's fees to individuals "whose net worth did not exceed $2,000,000 at the time the civil action was filed[.]"[4] 28 U.S.C. § 2412(d)(2)(B). Defendant, as the attorney's fees claimant, bears the burden to show he is eligible for an award under the EAJA. See id. at § 2412(d)(1)(B)

---

[2]These administrative documents do not appear to be on file with the court. In defendant's Federal Tort Claims Act case, which contests tribal grazing right allocations and BIA impoundment of some of his cattle, he alleges he suffered more than $552 million in damage from federal interference with his land and cattle. Temple v. United States, Civ. 17-5075 (Docket 1 at p. 13) (D.S.D. Sept. 20, 2017).

[3]The burden of proof language presumably serves to distinguish Hyde Amendment actions from the EAJA's standard in other civil cases, where an attorney's fees claimant must show the government's litigation position was "not substantially justified." 28 U.S.C. § 2412(d)(1)(B).

[4]For purposes of a Hyde Amendment award, the court uses the date of indictment as the equivalent of a civil filing date for determining if defendant financially qualifies for EAJA attorney's fees.

("A party seeking an award of fees and other expenses shall . . . show[] that the party . . . is eligible to receive an award under this subsection[.]").

The parties do not argue the court must employ any specific standard of proof in determining whether defendant was worth more than $2 million on the date of his indictment. Although this matter arises from a criminal case, attorney's fees disputes are a quintessentially civil matter. The court therefore adopts "the ordinary civil burden—preponderance of the evidence." Employers Mut. Cas. Co. v. Wendland & Utz, Ltd., 351 F.3d 890, 894 (8th Cir. 2003); cf. Castaneda-Castillo v. Holder, 723 F.3d 48, 73 (1st Cir. 2013) (applying preponderance standard in EAJA dispute).

Plaintiff did not show by a preponderance of the evidence that he was worth less than $2 million on April 18, 2017. He acknowledges he owned 11,374.3 acres of land on that date. Even applying his preferred valuation of $200 per acre, that results in a value of $2,274,660. On April 18, he also owned, by his own admission, 3,650 head of cattle of varying ages. Defendant consistently refused to provide a valuation of the worth of his herd. Even so, the government's estimate that his cows and bulls—only 1,550 head of his 3,650 herd—were worth $1.575 million weighs heavily against a finding that defendant was worth less than $2 million.

Defendant's liabilities do not plausibly lower his net worth below the $2 million mark. Assuming in defendant's favor that the BIA's "claimed amount of $350,000" is a valid debt against him, he had approximately $572,101 in admitted liabilities when he was indicted. That amounted subtracted only

from the low-ball estimate of his land's value would get defendant under $2 million. But when his land and livestock are considered together, his approximately half-million in liabilities cannot lower his net worth below $2 million.

Aside from these considerations, the court notes defendant consistently refused to provide any comprehensive accounting of his assets. While his land and livestock are no doubt his largest assets, the court presumes defendant may also own a home, vehicles and ranch equipment. The value of these assets is not accounted for and could well be substantial. This also weighs in favor of a finding that defendant was worth more than $2 million.

In sum, the court finds by a preponderance of the evidence that defendant was worth more than $2 million when he was indicted on April 18, 2017. This finding precludes an award of attorney's fees under the Hyde Amendment.

**ORDER**

For the reasons given above, it is

ORDERED that defendant's motion for Hyde Amendment attorney's fees (Docket 43) is denied.

Dated April 14, 2020.

        BY THE COURT:

        /s/ *Jeffrey L. Viken*
        JEFFREY L. VIKEN
        UNITED STATES DISTRICT JUDGE